

Night Drop
Filed
RECEIVED

2008 JAN 16  PM 4: 51

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

TIMOTHY CRAVEN

    Plaintiff,

CASE NO. 6:08-CV-80-ORL-18DAB

vs.

THE STATE OF FLORIDA; and

CHARLIE CHRIST, individually, and in his official capacity as the Governor of Florida; and

and other JOHN and JANE DOE EMPLOYEES of the State of Florida

ORANGE COUNTY, FLORIDA; and

EDWIN S. PONT M.D., individually, and in his official capacity as Medical Director of the Orange County Corrections Division; and

and other JOHN and JANE DOE EMPLOYEES of Orange County, Florida; and

LAKSESIDE BEHAVIORAL HEALTHCARE, INC., a Florida non profit corporation; and

and other JOHN and JANE DOE EMPLOYEES of LAKSESIDE BEHAVIORAL HEALTHCARE, INC.,

    Defendants

## **COMPLAINT**

### I.    INTRODUCTION

1. This is a Civil Rights and Malpractice Complaint brought by Tim Craven,

hereinafter referred to as ("Plaintiff"), complaining of the Defendants,

THE STATE OF FLORIDA, CHARLIE CHRIST, other JOHN and JANE DOE

EMPLOYEES of the State of Florida, EDWIN S. PONT, M.D., other

JOHN and JANE DOE EMPLOYEES of Orange County, Florida LAKESIDE

BEHAVIORAL HEALTHCARE INC., and other JOHN and JANE DOE EMPLOYEES

of LAKSESIDE BEHAVIORAL HEALTHCARE, INC. alleging they have conspired

together, directly, and/or, indirectly, for purposes of depriving Plaintiff of his rights,

privileges, and liberties, guaranteed to the Plaintiff and protected by the U.S. Constitution

and the laws of the United States and the State of Florida.

2.  This is also an action for negligence as embodied in Florida Statute Chapter 768.

Plaintiff has complied with the notice provisions of F.S. 768.28 to the extent that he

delivered a claim notification letter to the Defendants on January 15, 2008 (Attached

hereto as Exhibit A). Dr.  The Defendants have failed to honor this

claim or to resolve this claim.  Plaintiff brings this action at this time to comply with the

two-year statute of limitations requirement relating to malpractice.  The Plaintiff requests

leniency as he can show reason why this is a historically significant case and why his

damages arising out of this entire situation may set a world record.

3.  This is also an action for Slander, Abuse of Process, Libel, Intentional Infliction

of Emotional Distress, Deliberate Indifference, Defamation, Invasion of Privacy,

Malicious Prosecution, Abuse of Process, and Ethics Violations.  The acts of slander in

this complaint lead to the Plaintiff's life being destroyed and cost him a fortune in patent

rights.

4.  This is also an action for deprivation and violation of civil rights guaranteed by

the United States Constitution and for medical malpractice under Florida law.  The

amount in controversy exceeds the jurisdictional limits of the Court, exclusive of interest, costs and attorney's fees.

5.   Venue and jurisdiction are proper in this court because all of the wrongful acts complained of occurred within Orange County.

6.   All conditions precedent to the filing of this action have been performed or the Plaintiff requests that they be waived, including Notice to Defendants as required under Section 768.28, Fla. Stat.

7.   Pursuant to Florida Statute Section 766.203, the undersigned Pro Se Plaintiff does hereby certify that a reasonable investigation has been conducted as to the matters alleged herein and it has been determined that there are grounds for a good faith belief that there was negligence in the care and treatment of Plaintiff TIM CRAVEN and that grounds exist for the filing of this action against the Defendants.

8.   All conditions precedent to the filing of this action, including compliance with Florida Statute Section 766.106 and Section 766.203 have been performed or have been waived.

9.   Prior to the institution of this action, the Plaintiff complied with all of the requirements of Florida Statute 766.106 et. Seq.

10. On December 31, 2007, Plaintiff, TIM CRAVEN filed his Petition for Automatic Ninety (90) Day Extension of the Statute of Limitations in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida.

## II. JURISDICTION

11. This cause of action arose in the Middle District of Florida; therefore, venue is proper under 28 U.S.C. Section 1391(b).

### III. PARTIES INVOLVED IN THIS ACTION

12. Plaintiff, Tim Craven, is currently living in Orlando.

13. Defendant, THE STATE OF FLORIDA; and

14. CHARLIE CHRIST, individually, and in his official capacity as the Governor of Florida; and

15. and other JOHN and JANE DOE EMPLOYEES of the State of Florida

16. ORANGE COUNTY, FLORIDA; and

17. EDWIN S. PONT, M.D., individually, and in his official capacity as Medical Director of the Orange County Corrections Division; and

18. and other JOHN and JANE DOE EMPLOYEES of Orange County, Florida; and

19. LAKSESIDE BEHAVIOR HEALTHCARE, INC., a Florida non profit corporation

20. and other JOHN and JANE DOE EMPLOYEES of LAKSESIDE BEHAVIORAL HEALTHCARE, INC.,


### IV.JURY DEMAND

20. Plaintiff demands that this matter be decided by a jury.

### V.CAUSES OF ACTION:

16. For a First Cause of Action, the conspiracy and predicate acts alleged in this Complaint were committed by the Defendants to deprive Plaintiff of his right to privacy protected by the Fourth Amendment to the U.S. Constitution.

18. For a Second Cause of Action, the conspiracy and predicate acts alleged in this

Complaint were committed by the Defendants, states a claim under the laws of the State of Florida for the Tort of Malicious Prosecution.

19. For a Third Cause of Action, the acts of negligence alleged in this complaint were committed by employees of agencies, or subdivisions, of the State of Florida, states a claim for the Tort of Negligence under Florida Statute 768, Section 768.28.

20. For a Fourth Cause of Action, the conspiracy and predicate acts alleged in this Complaint were committed by the Defendants states a claim for the Tort of Intentional Infliction of Emotional Distress.

21. For a Fifth Cause of Action, the conspiracy and predicate acts alleged in this Complaint were committed by the Defendants states a claim regarding the Tort of Slander.

22. For a Sixth Cause of Action, the conspiracy and predicate acts alleged in this Complaint were committed by the Defendants states a claim regarding the Tort of Medical Malpractice.

23. For a Seventh Cause of Action, the conspiracy and predicate acts alleged in this Complaint were committed by the Defendants states a claim regarding the Tort of Legal Malpractice, Abuse of Process, Malicious Prosecution, Corruption, Racketeering, and Malfeasance.

**13. Plaintiff, complaining of the Defendants, herein alleges:**

21.    That sometime during 2005, the exact dates and times being unknown to the Plaintiff at this time, the Defendants, James J. Russell, Mary Lacienski, Officer Barb Bergen of the Orlando Police Department, and several other Orange County Sheriff's Department employees to be named later directly and/or indirectly unlawfully entered

into a conspiracy, for the purpose of aggrandizing themselves, and each of their careers, as a law enforcement officer, or official, for Orange County, Florida, had agreed between themselves, directly and/or indirectly, to embark upon a course of unlawful action against the Plaintiff, designed to cause the incarceration of the Plaintiff.

22.    That as a part of the conspiracy alleged in paragraph 21, the Defendants, entered into an agreement between themselves to fabricate charges against the Plaintiff.

23.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant Attorney Dougald Leitch committed malpractice by saying he would represent the Plaintiff at an Injunction hearing and then canceling out at the last minute, leaving the Plaintiff with no legal advice.

24.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant Officer Barb Bergen of the Orlando Police Department enlisted the assistance of Defendants at the Orange County Sheriff's Office in fabricating charges against the Defendant.

25.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant of the Orange County Sheriff's Department, acting upon the directions of, and in concert with Officer Barb Bergen of the Orlando Police Department, concocted a incredulous story that the Plaintiff charged the bench while the Judge's back was turned and that the Plaintiff resisted arrest.

26.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, employees of the Orange County Sheriff's Department Defendant, committed assault and battery by unnecessarily tazing the Plaintiff in the courtroom while he was peacefully kneeling on the chair with his hands in handcuffs behind his back.  The tazing was

without the consent of the Plaintiff, against his will, and completely unnecessary as the

Plaintiff was very still and as gentle as a lamb. There were a number

of bailiffs in the court and evidently one of them didn't like standing around with nothing

to do so he unnecessarily tazed the Plaintiff after he was handcuffed and peacefully

kneeling on the chair. The unconsented tazing was an unjustied and a use of excessive

force under the circumstances.

27.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants at the Orange County Sheriff's Office ordered the Plaintiff to stop

resisting even though he voluntarily kneeled on the chair and put his hands behind his

back and was not resisting in way, shape, or form. This is a way of falsely attesting to a

fabrication.

28.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Orange County had a policy of, custom, or practice allowing or enabling its officers,

acting under color of law, to use unreasonable levels of force in effecting an arrest or

apprehending a criminal suspect.

29.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, the Judge had his back turned to the court and was leaving the bench when the

Plaintiff was falsely accused. He did not see what happened and angrily asked the

Orange County Sheriff's, "What are you doing?" One of the Orange County Sheriff's

then slanderously and maliciously told the Judge, "He charged the bench." This was a

statement of fact falsely attested to in the court for the purpose of persuading the Judge to

issue an arrest warrant and sentence the Plaintiff. Since the Judge did not see the

incident, he evidently believed and relied upon the false and fabricated testimony of the

Orange County Sheriff's employee.

30.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Orange County had a policy, custom, or practice allowing or enabling its officers,

to arrest individuals without warrant and detain the individuals against their will, thereby

depriving them of their liberty.  The Plaintiff was wrongfully arrested in this manner.

31.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants at the Orange County Sheriff's Office violated the Plaintiffs

constitutionally protected right to be free from any unreasonable search and seizure and

the right to be free from arrest or deprivation of liberty absent probable cause as

contained in the Fourth Amendment to the United States Constitution and as applied to

Orange County through the Fourteenth Amendment to the U.S. Constitution.

32.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, the foregoing policy and/or custom or practice of Orange County was another

motivating force behind James J. Russell's and/or other officers' deprivation of Plaintiff's

constitutional rights.  Kevin Beary, as Sheriff and constitutional officer, had the duty to

supervise, monitor, and discipline as appropriate the conduct of James J. Russell and the

other Orange County Sheriff's Department employees in their capacities as law

enforcement officers.  Sheriff Kevin Beary's failure to appropriately supervise, train, or

discipline the officers involved in this incident directly led to the conduct of the officers

that deprived the Plaintiff of his constitutional rights.

33.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants at the Orange County Sheriff's Office prepared and

signed an official report of the Orange County Sheriff's Office, which falsely states that

the Plaintiff charged the bench and needed to be tazed.

34.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendants at the Orange County Sheriff's Department and committed malicious prosecution by advising that the Plaintiff's conduct warranted criminal charges for Resisting Arrest even though they knew that the charges were fabricated. This charge was fabricated to justify the slanderous accusations and unwarranted tazing of the Plaintiff.

35.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, the Plaintiff was incarcerated at the Orange County Correctional Facility. Defendants working at the Orange County Jail forced the Plaintiff to strip naked in front of recording video cameras. The Plaintiff later heard women around the corner talking and one of them said, "I knew he had a little one!" The Plaintiff presumed from the conversation that it was Officer Barb Bergen who had evidently stopped by the jail to commit further harassment on the Plaintiff and make sure that he was railroaded to the maximum extent possible by the corrupt and unethical Correctional Officers at the jail.

36.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendants working at the Orange County Jail forced the Plaintiff to wear a ridiculous padded green outfit which barely can down his thigh. If you wear this outfit in the jail it tells people you are suicide watch and/or mentally ill and it makes them not want to believe what you say. This is especially true when you claim you're truthful innocence regarding charging the bench. The Plaintiff was at all times truthful and correct in everything he said. The Plaintiff made it clear and advised jail personnel,

including booking officers and correctional officers, that he did not charge

the bench nor was he mentally ill in nay way.

37.      That in furtherance of the conspiracy alleged in the above

paragraphs 21 and 22, Defendants working at the Orange County Jail forced the Plaintiff

to be in a very small cell with a steel bed which was freezing cold for nearly two days.

Although the Plaintiff repeatedly requested a blanket or a warm cell while he stood and

shivered violently, the Correctional Officers showed deliberate indifference by refusing

to give the Plaintiff a blanket or move him to a warm cell.  This constituted cruel,

inhumane, and degrading treatment and was yet another way of torturing the Plaintiff.

After nearly two days of shivering and torture, the Plaintiff was showing symptoms of

hypothermia.  The Correctional Officers repeatedly and deliberately let the Plaintiff

shiver and suffer in the cold.

38.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants at the Orange County Sheriff's Department and the Orange County jail

refused to allow the Plaintiff to make any phone calls, including a call to his attorney.

39.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants working at the Orange County Jail told the Plaintiff that if he wanted to

leave the cell he needed to sign papers when he was so incoherent he couldn't even tell

what they were.  After the Plaintiff signed the papers, he was thrown into a freezing

cold dungeon-like environment for the criminally insane where he subjected to further

cruel, unusual, degrading, and inhumane treatment.

40.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants working on the Orange County Jail Medical staff committed medical

malpractice by deciding they were going to declare the Plaintiff to be insane

even though the Plaintiff was truthful, honest, and correct in every way and they were

wrong in every way. The acts or omissions on the part of the Orange County Jail

employees constitute breaches of the prevailing standard of care, skill, and treatment

which is recognized as acceptable and appropriate by reasonably prudent similar health

care providers in the community. Whatever laws entitle a doctor to do this and take away

someone most cherished rights are at their very core unconstitutional and should be

changed for the benefit of every citizen in the Untied States.

41.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants working at the Orange County Jail then committed medical malpractice

by illegally drugging the Plaintiff on December 24, 2005. Defendants working at the

Orange County Jail put drugs in his food which made the entire cell seem to spin around

as their way of making the Plaintiff look insane so they could videotape him.

The Plaintiff heard Correctional Officer Ortiz talking to a woman about doing it. The

Plaintiff heard the woman objecting and he clearly heard Correctional Officer Ortiz

say, "It's their floor and they run it as they see fit." The Plaintiff did nothing but lie

down and let the bed spin.

42.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants working at the Orange County Jail further harassed the Plaintiff when he

heard a female nurse asking a female Correctional Officer if she could see the videos of

the Plaintiff which the Correctional Officers took while he was taking a shower so she

could look at the scars where the Plaintiff was unlawfully tazed. The Plaintiff clearly

heard the Correctional Officer say that the Plaintiff never turned around when he

showered. The nurse asked why and the Correctional Officer showed her something on
the video screen. The nurse laughed out loud and said that explains that. This tells the
Plaintiff they evidently had videos showing full frontal nudity of the Plaintiff which they
could pull up on their computer screen anytime they wanted to degrade the Plaintiff. This
was a further act of harassment by the Defendants.

43.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and
22, Defendants working at the Orange County Jail further harassed the Plaintiff by telling
him they were discussing his situation at lunch with an individual who continuously
harassed the Plaintiff and then slanderously accused the Plaintiff of stalking.

44.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and
22, Defendants at the Orange County Jail refused repeatedly to give an Orientation which
he told all prisoners are supposed to attend. The Orientation had valuable information
about filing grievances and things of that nature which the Plaintiff needed to know
because they were violating his civil rights. The Plaintiff was also not allowed to make
phone calls.

45.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and
22, Defendants at the Orange County Jail refused repeatedly to give the Plaintiff a
property release form and to process the Plaintiff's property release forms. If the
Correctional Officers think you charged the bench and needed to be tazed, they single
you out for special treatment. The Plaintiff completed several property release forms and
the Plaintiff's wife went to pick up the Plaintiff's property several times and they refused
to give it to her. One of the property release forms the Plaintiff completed was in the bag
with the Plaintiff's property.

46.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant Dougald Leitch was the Plaintiff's attorney committed malpractice in order to curry favor with the other side and cut the only deal he thought his limited abilities were capable of making.  He disobeyed the Plaintiff's direction to plead innocent.  Dougald Leitch said he didn't think he could make that work.  Dougald Leitch was pushing for a mentally ill defense which the Plaintiff did not want because the Plaintiff is not and has never been mentally ill and vehemently resented the accusation.  The Plaintiff said he would settle for counseling but not being mentally ill.

47.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant Dougald Leitch hired Defendant consulting psychiatrist Jeffrey Danziger to testify on behalf of the Plaintiff which the Plaintiff paid for. Before the hearing, the Plaintiff in no uncertain terms told the psychiatrist he had thought the matter through and in no way did he want to be considered mentally ill based on the corrupt and false accusation that he charged the bench when he, in fact, did not charge the bench.  The Plaintiff was locked in a filthy cage and could not make phone calls.  The Plaintiff did not see Attorney Dougald Leitch or the Psychiatrist Jeffrey Danziger until the very end of the hearing even though he very much wanted to hear the entire hearing. The Plaintiff's psychiatrist betrayed the Plaintiff in every way.  The Plaintiff does not know if the psychiatrist failed to notify his attorney of the Plaintiff's desire to plead innocent.  The Plaintiff's psychiatrist committed malpractice by testifying to the negligent and malicious diagnosis that the Plaintiff was mentally ill when he was not. The psychiatrist even put false statements about the Plaintiff in his report and claimed the

Plaintiff said things he did not say.

48.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendant Psychiatrist Jeffrey Danziger prepared a report saying that the Plaintiff

thought he had valuable patent ideas and they were trying to steal them and that was

delusional.  The Plaintiff never said he thought they were trying to steal them.  The

Plaintiff said he did not want to be declared insane because they could steal them.  If the

Psychiatrist submitted his report to the court or testified about the patents it would have

been a great betrayal to the Plaintiff because he would have then advertised the Plaintiff's

vulnerability to people trying to harm him in every way.

49.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendant Judge George A. Sprenkel IV committed judicial misconduct and deprived

the Plaintiff of his right to a fair trial by holding a hearing where the Plaintiff was not

allowed in the courtroom to hear the damaging and slanderous testimony against him

which he never would have agreed to in a million years.  The Plaintiff thought that his

Psychiatrist was going to testy that he was not mentally ill and that he would get

counseling.  When the Plaintiff was allowed in the courtroom the Judge sold the Plaintiff

a bill of goods which turned out to be false abut how quickly the Plaintiff would be

released from jail provided he complied with the minor stipulations the Judge stated.

This served to further help further railroad the Plaintiff.

50.    That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, the Plaintiff heard a Defendant nurse working at the Orange County Jail angrily and

viciously saying that the Plaintiff needed to go to Lakeside Alternatives because the

Plaintiff was talking about pictures.  This is a grotesque injustice because

everything the Plaintiff said about pictures was absolutely true.  Lakeside
Alternatives is a mental health facility under contract with the Orange County Jail to
provide metal health services.  The Plaintiff was still under the official custody of Orange
County while he was in the care of Lakeside Behavioral Healthcare, Inc. at Lakeside
Alternatives and they have a racketeering type relationship.  The corrupt people at
Orange County wanted to discredit the Plaintiff because he made it clear he was illegally
drugged on December 24, 2005 and they knew they were guilty.   This form of abuse of
process and malicious prosecution is their way of disabling dissidents and those who
know they are corrupt and unethical.  It also served to help them steal the Plaintiff's
incredibly valuable patent rights.

     51.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and
22, Defendants a Lakeside Alternatives conspired with the doctors at the jail to destroy
the Plaintiff's reputation every way they could.  A certain doctor at Lakeside Alternatives
did everything he could to make it plain that he was a corrupt, shyster, unethical,
politically connected, and vicious person.  When the Plaintiff first met Defendant Dr.
Eugene Silversteen, Dr. Silversteen interrupted every sentence the Plaintiff said and then
Slanderously and unethically claimed that the very articulate Plaintiff was unable to put
two words together.  He then told the Plaintiff that everyone at the jail, "said he was
nuts."  It was clear that Dr. Silversteen was conspiring with the corrupt doctors at the jail
who evidently believed and committed slander against the Plaintiff and wanted to railroad
the Plaintiff.  The jail pays Lakeside Alternatives to do certain types of mental health care
and they have a relationship.  The Plaintiff was still in the custody of Orange County
Corrections when he was in the care of Lakeside Behavioral Healthcare, Inc.  How the

doctors at the jail could even form an opinion about the Plaintiff is beyond the Plaintiff, especially in view of the fact that they barely even talked to him and don't know a thing about him other than whatever slander they heard from corrupt law enforcement officers who wanted him to look insane for corrupt and self-serving reasons. Using the crackpot laws to deprive the Plaintiff of his rights relating to a fictitious mental illness in this matter is a grotesque injustice and an unconstitutional act of malpractice, malicious prosecution, and abuse of process.

52.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendants a Lakeside Alternatives Dr. Silversteen was openly hostile to the Plaintiff in every way in front of other Psychiatrists and then he committed malpractice, abuse of process, negligence, slander, and malicious prosecution by trying to make the Plaintiff look insane.

53.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, a Defendants administrator at Lakeside Alternatives never had required meetings with the Plaintiff to advise him of his situation and rights, and yet she asked him to sign papers saying that they did meet when the truth was they hadn't.

54.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant Attorney Dougald Leitch committed malpractice by saying he would represent the Plaintiff at yet another hearing and then canceling out at the last minute, leaving the Plaintiff with no legal advice.

55.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and 22, Defendant Attorney Dougald Leitch committed malpractice by saying he filed an appeal of the Plaintiffs Injunction hearing when he actually filed it in the wrong place and

missed the deadline. That in furtherance of the conspiracy alleged in the above

paragraphs 21 and 22, Defendants a Lakeside Alternatives have refused for nearly two

years to give Plaintiff copies of his properly requested medical records. The above acts

or omissions by the Lakeside Behavior Healthcare employees or its agents, the Orange

County Jail employees or its agents, Dr. Jeffrey Danziger, and attorney Dougald Leitch

occurred within the course and scope of such agency or employment. Pursuant to the

doctrine of respondeat superior Defendant Orange County, Defendant Lakeside

Behavioral Healthcare, Inc., Defendant Mahaffy and Leitch, and Defendant Psychiatric

Affiliates, Inc. are liable for the negligent acts or omissions of its employees and agents.

The conduct by the Defendants was so gross and flagrant as to show a reckless disregard

of human life, property, human rights, or the safety of persons exposed to the effects of

such conduct; or the conduct showed such an entire lack of care that there must have been

conscious indifference to the consequences; or the conduct showed such an entire lack of

care there must have been wanton or reckless disregard for the safety of the public; or the

conduct showed such reckless indifference to the rights of others as to be equivalent to an

intentional violation of those rights.

Orange County is, and before the events described above was, aware of numerous

problems concerning grossly substandard medical care by Lakeside Behavioral

Healthcare, Inc. Despite gross and repeated malpractice committed by Lakeside

Behavioral Healthcare, Inc. and the staff at the Orange County Jail, Orange County failed

to adequately train them or prevent them from engaging in corruption, malpractice, abuse

of process, and malicious prosecution despite their responsibility for providing care.

Despite its knowledge of systemic problems with its delivery of correctional medical

services, Lakeside Behavioral Healthcare continues to do business as usual, as inmate after inmate suffers damages due to a ridiculous and premeditated off the cuff snap diagnosis and politically motivated corruption.

Orange County and Lakeside Behavioral Healthcare, and Psychiatric Affiliates P.A. along with their agents, servants, and employees knowingly and recklessly prevented the Plaintiff from obtaining a desperately needed fair and accurate diagnosis of his mental Health, which was just fine. The Defendants knew that their actions were causing the Plaintiff severe harm and emotional distress.

The Defendants knew they were not equipped to do a fair and accurate diagnosis.

Defendant, ORANGE COUNTY, while acting under color of State law, employed a custom of violating its own policies and procedures which resulted in deliberate indifference to the Plaintiff's needs in the failure or refusal of the Orange County Corrections Division to provide appropriate, timely, and competent psychiatric and medical attention to the Plaintiff which deprived the Plaintiff of his rights secured under the Eight and Fourteenth Amendments. Alternatively, Defendant, Orange County, under color of state law, failed to enact or promulgate sufficient policies and procedures to ensure against the deliberate indifference to the Plaintiff's civil rights and serious medical needs.

Defendant, Orange County violated the Plaintiff's civil rights and failed to provide the Plaintiff with appropriate, timely, and competent medical treatment as secured by the Eight and Fourteenth Amendments. This also violated the Plaintiffs rights to be free from cruel and unusual punishment secured by the Eight Amendment and/or his right to due process under the Fourteenth Amendment.

The damages sustained by the Plaintiff, including the severe mental aguish and suffering, was the reasonably foreseeable result and consequence of Defendant's custom of ignoring policies and procedures and/or the failure to enact sufficient policies and procedures resulting in the deliberate indifference to his serious medical and legal needs. Defendants, through their actions above, caused the Plaintiff to be subjected to the deprivation of rights, privileges, and immunities secured by the constitution and law of the United States, including:

      a.  The right to liberty protected by the Fourteenth Amendment;

      b.  The right to due process protected by the Fourteenth Amendment;

      c.  The right not to be subjected to cruel, unusual, and excessive punishment as guaranteed to pretrial detainees by the Fourteenth Amendment and to prisoners by the Eight Amendment;

      d.  The right to have serious medical needs addressed in a timely manner as guaranteed to pretrial detainees by the Fourteenth Amendment;

      e.  Violating State created rights enforceable under the Fourteenth Amendment by violating rules and regulations of the State of Florida, including but not limited to, Chapter 951 (County and Municipal Prisoners), Fla. Stat. (1995), and those fundamental rights to due process, liberty, and life as guaranteed by the Constitution of the State of Florida;

      f.  Violating their own Administrative Orders and Standard Operating Procedures relating to providing health care to inmates; and

      g.  Failing to ensure that the Orange County Department of Corrections Jail Facilities are adequately staffed with appropriate numbers of physicians

and nursing staff and appropriately trained physicians and nursing staff so

as to ensure timely, adequate, and appropriate medical treatment of

inmates housed at the Orange County Correctional Facility.

Defendants had actual or constructive knowledge of the Plaintiff's serious medical needs;

however, they displayed deliberate indifference to the fact that he had obvious signs of

hypothermia which required immediate attention. The Defendants also knew of the

Plaintiff legal problems and the Plaintiff need to be legally secure. Defendant's acts and

omissions deprived the Plaintiff of clearly established constitutional rights and evidence

deliberate indifference to the Plaintiff's and other inmate's safety and welfare.

Medical Negligence

Defendants Dr. Jeffrey Danziger, Lakeside Behavioral Healthcare, and Orange County

had a duty to render to their patient, Plaintiff Tim Craven, medical

care and treatment in accordance with prevailing professional standards of care in Central

Florida and other similar medical communities. Defendants Dr. Jeffrey Danziger,

Lakeside Behavioral Healthcare, and Orange County, were negligent in the

care and treatment rendered to the Plaintiff in that they breached the

prevailing standard of care of said health providers, to wit: the level of care, skill and

treatment, which in light of all relevant surrounding circumstances, is recognized as

acceptable and appropriate by reasonably prudent similar health care providers.

Defendant Defendants Dr. Jeffrey Danziger, Lakeside Behavioral Healthcare, and Orange

County, deviated from the acceptable standard of care and treatment of Plaintiff by

reason of, but not limited:

a.    Failing to listen to and believe the truth of what happened to the Plaintiff;

b.     Prescribing needless medication to the Plaintiff with harmful side effects;

c.     Putting medication in the Plaintiff's food without his knowledge in violation of the law;

d.     Failing to provide a physical examination of the Plaintiff when he was freezing in the cell for two days;

e.     Failing to appropriately monitor the Plaintiff;

f.     Failing to adequately examine the Plaintiff or spend any significant amount of time with the Plaintiff in order to derive something other than a snap diagnosis;

g.     Failing to provide appropriate safeguards to prevent the framing and railroading of people who tell the truth when the Sheriff Department's lies;

h.     Failure to properly diagnose the Plaintiff correctly.  Again, everything the Plaintiff said was and has proven to be absolutely true and correct;

i.     Failing to investigate the elements of the Plaintiff's story which they wrongly choose to disbelieve.

j.     Failing to realize that the Plaintiff was responding to their questions with 100% truthful an accurate answers instead of what they wrongly termed were delusions based on their own faulty snap diagnosis and negligent lack of due diligence.

k.     Betraying the Plaintiff's right to privacy regarding his patent rights. Contrary to the standard of care required by similar health care providers, the medical care and treatment of the Plaintiff was negligently and carelessly performed by the Defendant.

l.      Completely disregarding the Plaintiff's wishes and true statements

of fact.  The Plaintiff explained the situation in elaborate detail and

emphatically said he was not mentally ill.  The Plaintiff also said he did

not want to be declared mentally ill a court of law.

56.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants in the Orange County government, the Florida State government, and the

United States federal government took the Plaintiff's disk with over 700 patent ideas and

decrypted it even though it was double encrypted.

57.     That in furtherance of the conspiracy alleged in the above paragraphs 21 and

22, Defendants in the United States federal government and the State of Florida stole the

patent ideas exposed to vulnerabilities by Jeffrey Danziger and Dougald Leitch and

exploited the malpractice committed by the Defendants to the maximum degree possible.

According to the Congress, the patents are valued an amount so astonishing and

staggering it is difficult to quote in this document.

58.     As a result of the actions of the Defendant Jeffrey A. Danziger, Dougald

Leitch, the State of Florida, Orange County and the Orange County Sheriff's employees

of which the Orange County Sheriff's Department is responsible, the Plaintiff has

suffered damages which include emotional anguish, loss of enjoyment of life,

psychological harm, emotional distress, bodily injuries and physical suffering, physical

inconvenience, physical discomfort, medical expense, loss of time, mental suffering,

scorn, embarrassment, humiliation, disgrace, shame, loss of astonishingly valuable

intellectual property rights, and injury to his feelings and reputation.  The emotional

damage and reputation damage are continuing to this day and are likely to continue in the

future.

**14. Plaintiff's Request for Relief:**

WHEREFORE Plaintiff demands judgment of $1,000,000.00 from each Defendant

Other than the State of Florida for punitive and compensatory damages, costs, and other

such further relief as this court may deem proper.

WHEREFORE Plaintiff demands judgment of $700,000,000.00 from the State of

Florida for punitive and compensatory damages, costs, and other such further relief as

this court may deem proper.

## VERIFIED COMPLAINT

Tim Craven, under penalty of perjury pursuant to 28 U.S.C. Section 1746, states
that the allegations that he has set forth in this complaint are true and correct, and are
based upon his own personal knowledge, beliefs and documents, that are a matter of
public record.

Dated January 16, 2008, at                    By: _____
Orlando, Florida                                      Tim Craven / Plaintiff
                                                      3010 Redwood National Dr.
                                                      apt. 3603
                                                      Orlando, FL 32837
                                                      (407) 438-9929